## THE NORTH AMERICA.
## THE SCULLY.

District Court, S. D. New York. February 21, 1928.

**1. Collision ⊘150—Ordinarily findings of commissioner in admiralty on conflicting testimony are accepted.**

In libel for collision, findings of commissioner in admiralty are ordinarily accepted, when his determination is reached on conflicting testimony.

**2. Collision ⊘150—Finding that master of damaged schooner was justified in refusing tow, and that delay while awaiting towage was due to factors common to two collisions, held not disturbed.**

In libel for two collisions, finding that master of damaged schooner was justified in not accepting tow to New York in view of schooner's damaged condition, and that delay while awaiting towage was therefore due to factors common to both collisions, held, not disturbed.

**3. Admiralty ⊘85—Finding of commissioner in admiralty, not clearly erroneous, will not be disturbed.**

Finding of commissioner in admiralty will not be disturbed, where it is not clearly erroneous.

**4. Collision ⊘136—Four days' allowance for survey and preparing specifications for repairs to schooner damaged in collisions held reasonable and fair.**

In libel for two collisions causing damage to schooner, allowance of seven days for survey and preparing specifications for repairs held reduced to four days, since reduced allowance is reasonable and fair.

**5. Collision ⊘136—Detention for taking schooner damaged in two collisions to nearest repair yard to complete repairs necessitated by one collision held properly charged against respondent not responsible for such collision.**

Where schooner damaged in two collisions was taken to nearest available repair yard to complete repairs made necessary by one collision, detention for taking schooner to repair yard held properly charged against respondent, which was not responsible for such collision.

**6. Collision ⊘130—Interest on damages sustained in collision are ordinarily computed from date of collision, or date expenditures for repairs become payable.**

Interest on damages sustained in consequence of collision is ordinarily computed from date of collision, or from date when expenditures for repairs become payable.

**7. Collision ⊘130—Interest on collision damages held limited to period of one year from entry of interlocutory decree two years after collision, plus accrued interest from time of collision.**

In libel for damages to schooner in collision, in which libelant delayed two years in presenting proof, including rebuttal, with additional delay in closing case and rendering decision, commissioner's report being filed ten years after collision, interest held granted on amounts of dam-

ages recoverable for one year from entry of interlocutory decree, which was two years after collision, in addition to accrued interest to such time from time of collision.

**8. Collision ⬥130—Allowance of interest on damages from collision is not absolute right, but rests in court's discretion.**

Allowance of interest on damages in libel for collision is not absolute right, but is allowance depending on circumstances, and largely in discretion of court.

**9. Collision ⬥130—Interest on recovery for collision may be reduced for delay in bringing cause to final determination, though delay was caused by commissioner.**

In libel for damages due to collision, delay in bringing cause to final determination may justify court in reducing interest allowance, though delay was caused by commissioner, since libelant had right to move court for direction to speed case by requiring commissioner to make report within designated time.

In Admiralty. Libel by Pendleton Bros., Inc., against the steam tug North America and the barge Scully; the Potter Transportation Company, claimant. On exceptions to report of special commissioner in admiralty. Report modified and confirmed.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass. (Albert T. Gould, of Boston, Mass., of counsel), for libelant.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and C. B. Manley O'Kelley, both of New York City, of counsel), for respondent.

HAZEL, District Judge. The exceptions to the commissioner's report relate (1) to detention of the damaged schooner F. C. Pendleton at Vineyard Haven from December 17, 1917, to January 1, 1918, while awaiting towage to New York; (2) regarding an allowance of seven days for survey and preparing specifications for repairs; (3) time required to make collision repairs; (4) time allowance for proceeding from New York to the repair yard; (5) allowance of interest.

The collision between the schooner Pendleton and barge Scully, in tow of the North America, occurred on December 11, 1917, and the injured vessel was taken in tow by the North America to Vineyard Haven. On the evening of December 13th, the L. V. barge No. 786 also collided with the Pendleton, considerably damaging her. On December 17th, temporary repairs were made. It is claimed, to minimize damages, that the North America offered to tow the Pendleton back to New York, but that the offer was refused. The commissioner found that liability for detention from December 17th until

January 1st depended upon whether the offer of the tug North America to tow the schooner back to New York should have been accepted. There was contradictory testimony as to this. It is claimed that the captain of the tug remarked that, in view of the weather conditions, it was imprudent to tow the steamer in her damaged condition to New York, and that the master of the Pendleton assented. But the master of the tug denied giving such opinion, and asserted that the Pendleton's master unqualifiedly refused the tow offered by him, and also denies that weather conditions were bad.

[1-3] Ordinarily the findings of a commissioner are accepted when his determination is reached on conflicting testimony, yet, in the instant case, considering the lapse of time between testifying and the preparation of the commissioner's report, I would scarcely consider myself bound by this rule, if it were not for the distinct finding that the commissioner drew his inference from the fact that he was satisfied that both masters really felt that it was imprudent to tow the vessel in her damaged condition to New York. This inference, I assume, was apparent to him from the manner in which they testified. He concedes that his determination was based on rather close testimony, and that he would have entertained the view that the schooner should have accepted the tug's offer, if the schooner had received only one injury. But, having received two injuries from her two collisions, he believed that the master of the schooner was fairly justified in any reluctance to accept the tow, and, accordingly, that the 15 days' delay was due to factors common to both collisions. In the circumstances, I do not think that I ought to disturb his finding, since it is not clearly erroneous. The North Star (C. C. A.) 151 F. 168.

[4] As to the delay in preparation of specifications, surveyors' reports, etc., the commissioner allowed 7 days (3½ days chargeable to the Scully). There was no conflict of testimony regarding this item, and he seems to have taken witness Bagger's estimate as his guide. Bagger testified that 2 days to a week, in his opinion, would be sufficient, and that four days would be a reasonable time from the completion to the beginning of the repair work. The commissioner set aside the opinion of Capt. Gardner, who testified that 4 days were ample for survey, opening bids, preparation of specifications, and taking the vessel to the repair yard. There was some delay in the preparation of the survey after the discharge of her load was finished, which

I think could have been avoided, if libelant had exercised reasonable diligence. It seems to me that an allowance of 4 days' delay would be reasonable and fair, and the commissioner's finding, as to this item, is modified.

[5] No exception is urged by either party for the allowance of 40 days' for detention, due to time taken in making collision repairs at Mystic, Conn., except that, on behalf of the Scully, it is urged that, since the Pendleton was taken to the Mystic yard solely to complete the repairs made necessary by the L. V. barge collision, no detention for taking the schooner to the repair yard should be charged against the Scully, beyond 1 day, or 18 days in all. This would seem a reasonable ground for modification, were it not shown that no yard was available in New York to make the repairs, and as it stands, the boats having been taken to the nearest available yard, the finding is approved. The City of Chester (D. C.) 34 F. 429.

[6, 7] As to the interest: On the repairs, interest was allowed from August 20, 1918; on expenses from March 1, 1918; on damages for detention from August 27, 1918, the date when the vessel was restored to service; and the total damages found were $13,724.35. There is no doubt but that the great weight of authority is that interest on the damages sustained in consequence of collision is ordinarily computed from the date of the collision, or from the date when the expenditures for repairs became payable. In re Great Lakes Dredge & Dock Co. (D. C.) 250 F. 916, and see affirming decision (C. C. A.) 256 F. 497. It is shown that on January 28, 1920, claimant offered to allow assessment of damages to libelant in the sum of $13,000, and on November 6, 1920, claimant stipulated libelant's damages (other than detention) and agreed to a per diem rate of detention. The commissioner allowed $13,724.35 as principal, $724.35 more than claimant's offer of judgment.

In his report the commissioner frankly stated that the chief delay in filing his report is attributable to him. That the delay in bringing the cause to a final determination was extraordinarily long will readily be observed, when it is stated that the trial occurred about 1 year and 2 months after the libel was filed; that the offer of judgment, before any testimony as to damages was taken, was made in January, 1920; the proofs of damages before the commissioner began on April 1, 1921, 1 year and 4 months after entry of the interlocutory decree; libelant's testimony was concluded 1 year later, while claimant's testimony was in on November 2, 1922, the case being closed on August 1, 1923, and commissioner's report filed August 30, 1927, 4 years later. While the hearings before the commissioner may not have been vigorously pressed by either side, as the commissioner states, still the libelant delayed 2 years at least in presenting its proof, including rebuttal. There was also delay in closing the case before the commissioner, and the delay in rendering decision is not explained. Such delay resulted in inconvenience, larger cost and expense, and is difficult to excuse, especially as the claim for detention was practically the only one seriously litigated.

It is also to be noted that libelant claimed 239 days' detention, as against 72 days allowed by the commissioner. The asserted claim for repairs and detention was six times the number of days allowed against the barge Scully, and close to four times the full amount allowed for both collisions. Seven years elapsed after claimant's offer of January 26, 1920, to the time of the commissioner's decision, and nearly 10 years after the collision. The interest, on the basis of the commissioner's allowance, at 6 per cent., amounts to approximately $7,698.

[8] In The Scotland, 118 U. S. 507, 6 S. Ct. 1174, 30 L. Ed. 153, it was said by the Supreme Court that an allowance of interest on damages is not an absolute right. It is an allowance depending upon circumstances, and largely in the discretion of the court. It is difficult to escape the conclusion that libelant, owing to its inordinate claim and delay in proceeding with its proof, was mainly responsible for the delay.

In Pennsylvania R. Co. v. Downer Towing Co., 11 F. (2d) 466, the Circuit Court of Appeals, by the late Judge Hough, ruled that delay in urging a case to conclusion was justification for disallowing interest. Indeed, there are numerous cases wherein the courts have unhesitatingly held that a libelant's delay in bringing a cause to a final determination justifies the court in exercising its discretion by disallowing interest or allowing interest, as said in The Arpillao (C. C. A.) 270 F. 426, for a less time than that for which it would normally be allowed.

[9] Libelant pleads that it should not be penalized for the delay of the commissioner, or for something over which it had no control. But it had control over such delay, since it was within its right to move the court for direction to speed the case by requiring the commissioner to make his report within a designated time. Encyc. of Pl. & Pr. 1031. It was remiss in not doing so.

While such a course was open to both parties, it is not ordinarily invoked by a defendant. Therefore, in computing interest, it seems to me proper to grant the same on the various amounts of damages recoverable as herein determined for a period of one year from the time of the entry of the interlocutory decree, December 23, 1919, in addition to the accrued interest to such time from the time of the collision on December 11, 1917.

The report of the commissioner is modified as herein indicated, and confirmed in other respects.