**Giuseppe INGRAVALLO, Plaintiff,**

v.

**POOL SHIPPING CO., Ltd., Defendant.**

**Civ. A. No. 63–C–719.**

United States District Court
E. D. New York.

Nov. 4, 1965.

DiCostanzo, Klonsky & Sergi, Brooklyn, N. Y., for plaintiff; Philip DiCostanzo, Brooklyn, N. Y., of counsel.

Kirlin, Campbell & Keating, New York City, for defendant; Vernon S. Jones, New York City, of counsel.

ABRUZZO, District Judge.

This is a motion made by the defendant pursuant to Rule 12(b) of the Federal Rules of Civil Procedure for an order vacating and setting aside the service of the summons and complaint made at Darlington County, Durham, England, on August 17, 1965, and dismissing this action for (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person and (3) insufficiency of service of process.

This cause of action accrued on May 26, 1959, when the plaintiff-longshoreman while aboard the defendant's M.V. TROUTPOOL sustained an injury when a bale of rubber fell and struck him on his lower left extremity allegedly due to the defendant's negligence and breach of warranty of seaworthiness. A complaint based on diversity of citizenship was initially filed on March 23, 1962, and discontinued on December 3, 1963, at the call of the dismissal calendar. This action was again instituted on June 10, 1963, by the filing of an identical complaint, except that it named T. H. Winchester & Co. as the alleged general agent of the defendant in place of Black Diamond Steamship Co., and the summons, as in the first action, was not served because the alleged general agent was not the agent of the defendant. On August 17, 1965, some two years after 'he commencement of the suit and a little more than six years after the cause of action accrued, the plaintiff effectuated service upon the defendant by serving the defendant's general agent, Sir R. Ropner & Co., Ltd., at Darlington County, Durham, England, with a copy of the summons and complaint dated June 10, 1963, pursuant to Judge Rosling's order dated July 16, 1965.

The defendant's contention that the Court lacks jurisdiction of the subject matter because the amount in controversy does not exceed $10,000 is unwarranted. In St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, pp. 288–289, 58 S.Ct. 586, p. 590, 82 L.Ed. 845, the Court stated:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. * * *

It is apparent from reading the plaintiff's complaint and affidavit as to the extent of the plaintiff's injury and the permanency thereof that he has satisfied the requirements of the aforementioned rule.

The plaintiff contends that this Court acquired jurisdiction over the person of the non-resident defendant by reason of the service of the summons and complaint upon the general agent of the defendant without the State and that said service of process upon the non-resident defendant was proper under the provisions of Rules 3, 4(e) and 4(f) of the Federal Rules of Civil Procedure and Sections 302, 313 and 10003 of the New York Civil Practice Law and Rules. Further, that a question of personal jurisdiction over the non-resident defendant was feasible in the light of 302 C.P.L.R. in that this cause of action was one arising out of the non-resident defendant's "transacting of any business within this state," and/or was a "tortious act committed within this state." The thrust of the defendant's argument is many-pronged: (1) 302 C.P.L.R. applies only to actions instituted after the effective date of the C.P.L.R. (September 1,

1963) ; (2) 302 C.P.L.R. does not furnish an arguable jurisdictional basis for the service on August 17, 1965, as a "further proceeding in a pending action," pursuant to 10003 C.P.L.R., for it "would not be feasible" and "would work injustice" to justify out-of-the-country service; (3) the legislative policy stated in Section 74 of the Navigation Law, McKinney's Consol.Laws, c. 37, excluding "long-arm" jurisdiction over accident claims arising solely from the use and operation of foreign documented vessels, would preclude the application of 302 C.P.L.R. to such an accident so as to nullify that fundamental provision; and (4) that plaintiff's cause of action for a breach of warranty of seaworthiness for improper stowage was not a tortious act committed within this State nor was it a cause of action arising from the defendant's transacting of any business within this State. The first issue to be resolved is whether 302 C.P.L.R. and the related 10003 C.P.L.R. are applicable to the facts of this case. This Court is of the opinion that they are. 302 C.P.L.R. provides:

### § 302. *Personal jurisdiction by acts of nondomiciliaries*

(a) *Acts which are the basis of jurisdiction.* A court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:

    1. transacts any business within the state; or

    2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

    3. owns, uses or possesses any real property situated within the state.

(b) *Effect of appearance.* Where personal jurisdiction is based solely upon this section, an appearance does not confer such jurisdiction with respect to causes of action not arising from an act enumerated in this section.

10003 C.P.L.R. provides:

### § 10003. *Pending and subsequent proceedings*

This act shall apply to all actions hereafter commenced. This act shall also apply to all further proceedings in pending actions, except to the extent that the court determines that application in a particular pending action would not be feasible or would work injustice, in which event the former procedure applies. Proceedings pursuant to law in an action taken prior to the time this act takes effect shall not be rendered ineffectual or impaired by this act.

The defendant cites Simonson v. International Bank, 14 N.Y.2d 281, 251 N.Y.S. 2d 433, 200 N.E.2d 427, quite extensively to sustain his claim that the aforementioned statutes are not applicable in this case. In Simonson, page 290, 251 N.Y.S. 2d page 440, 200 N.E.2d page 432, the Court held that 302 C.P.L.R. had retroactive effect only to "suits instituted after its effective date but based on previously accrued causes of action." The Court stated further on that same page, "it is manifest, despite some lower court cases to the contrary (see e. g., Steele v. De Leeuw, 40 Misc.2d 807 [244 N.Y.S.2d 97] ; Rand, Inc., v. Joyas De Fantasia, 41 Misc.2d 838 [246 N.Y.S.2d 778]), that the new section does not apply to actions instituted prior to its effective date and does not operate, by relation back, to validate an attempted service of process which was jurisdictionally defective when made, because in such a case we deal with a prior service itself and not with a 'further proceeding' in the action (cf. C.P.L.R. § 10003)."

The facts as stated in Simonson would appear, and correctly so, to sustain the conclusion reached by that Court. A careful reading of Simonson, however, must lead one to draw a different conclusion as respects the facts of the case

before this Court. In Simonson the appellant was seeking by use of 302 C.P.L.R. to "validate an attempted service of process" which was made before the effective date of the new C.P.L.R. Under the old 218 C.P.A. and new 304 C.P.L.R an action is commenced by the service of a summons. Inasmuch as the appellant did not serve the respondent with a summons, an action was not commenced and therefore appellant's later recourse to 302 C.P.L.R. in order to effectuate service was not, in effect, a "further proceeding in a *pending action.*" (Italics supplied.)

■ In the Simonson case the appellant was suing for breach of contract, a state-created right governed by the state's statute of limitations. In the case before this Court the plaintiff has joined with his action for negligence an action for breach of warranty of seaworthiness. Although the action for breach of warranty of seaworthiness is analogous to a cause of action for breach of contract for the purposes of applying this State's statute of limitations, this unique species of liability, which has its roots in general maritime law and which has been interpreted by federal decisional law, cannot be considered as a state-created right subject to the substantive law of that particular state. See Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); Le Gate v. The Panamolga, 221 F.2d 689 (C.A.2d); Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143.

In Amato v. Cie Maritime Belge (Lloyd Royal) S.A., 212 F.Supp. 330, 331 (E.D. N.Y.), the Court states as follows:

There is no federal statute of limitations as to actions based upon the general maritime law. Thus if the claim had been brought in admiralty the proper limitation would have been laches. Here, however, the suit is on the civil side of the federal court under the savings clause, 28 U.S.C. § 1333, *which permits vindication of maritime rights through other remedies.* * * * (Italics supplied.)

In Amato, supra, the Court further states (p. 331):

The injury occurred in New York State and it is to the pertinent New York statute of limitations that the court must look. While the view in other jurisdictions is that the tort statute of limitations is the guide, see Oroz v. American President Lines, Ltd. [2 Cir., 259 F.2d 636], supra; Dawson v. Fernley & Eger, 196 F.Supp. 816 (E.D.Va.1961), in this Circuit as to personal injury maritime claims arising in New York State our courts look to the New York statute of limitations applicable to claims grounded in breach of contract as the guide, because when a personal injury maritime case, based upon unseaworthiness, is instituted in a New York State court that court applies its six year statute of limitations applicable to contract cases. New York Civil Practice Act § 48(3); Johnsen v. McAllister Lighterage Lines, Inc., 8 A.D.2d 831, 190 N.Y.S.2d 117 (2d Dep't 1959); LeGate v. The Panamolga, supra; Doherty v. Federal Stevedoring Co., 198 F.Supp. 191 (S.D.N.Y.1961); Scott v. United Fruit Co., 195 F.Supp. 278 (S.D.N.Y. 1961); Murphy v. A/S Sobrol [Sobral], 187 F.Supp. 163 (S.D.N.Y. 1960); contra, Baez-Geigel v. American Foreign S. S. Corp., 171 F.Supp. 359 (S.D.N.Y.1959) decided three months prior to the decision of the New York Supreme Court, Appellate Division, Second Department in the Johnsen case.

In Paduano v. Yamashita Kisen Kabushiki Kaisha, 120 F.Supp. 304, p. 309, this Court promulgated the following statement regarding causes of action arising under maritime law:

First, it is settled law that a cause of action arising under the maritime law is governed by admiralty principles, and that those principles are applied wherever the cause is brought completely unfettered by any contravening law, and operating

uniformly throughout the land. Southern P. Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086.

\* \* \*

In Jansson v. Swedish American Line, 185 F.2d 212, 216, 30 A.L.R.2d 1385 (C.A. 1st), the Court stated the following:

> At the outset, it is to be noted that this is not a case falling within the rule of Erie R. R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, under which a federal district court sitting in Massachusetts would be obliged, in a diversity of citizenship case, to apply the local substantive law of Massachusetts (including its rules applicable to choice of law problems) as declared by the courts of the State. True, the complaint herein starts off with the recital: "Jurisdiction in this action is based on diversity of citizenship and amount." But the cause of action asserted is founded on a maritime tort, cognizable in admiralty; and hence the substantive law to be applied is the "general maritime law" of which the ultimate expositor is the Supreme Court of the United States.

■ The facts of this case clearly indicate that the plaintiff by filing his complaint (wherein he joined with his cause of action for negligence an action for unseaworthiness) and summons on June 10, 1963, with the Clerk of this Court had *commenced* an action pursuant to Rule 3 F.R.Civ.P. which provides:

Rule 3. *Commencement of Action*

> A civil action is commenced by filing a complaint with the court.

See Bomar v. Keyes, 162 F.2d 136 (C.A. 2d); Mohler v. Miller, 235 F.2d 153 (C.A. 6th); and Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8.

Now that it is established that the plaintiff herein has commenced an action, this Court must resolve the following questions: (1) is plaintiff's recourse to 302 C.P.L.R., in order to effectuate service, a *further proceeding in a pending action*, and (2) if so, would recourse to 302 C.P.L.R. work an "injustice" or be "unfeasible" so as not to justify the out-of-country service (cf. 10003 C.P. L.R.).

10003 C.P.L.R. has its roots in and was fashioned according to 86(a) F.R.Civ.P. See comment on 10003 C.P.L.R., Legislative Studies and Reports, p. 44, in McKinney's Consolidated Laws of New York Annotated, Book 7B. 86(a) F.R.Civ.P. provides the following:

Rule 86. *Effective Date*

> (a) [Effective date of original rules]. These rules will take effect on the day which is 3 months subsequent to the adjournment of the second regular session of the 75th Congress, but if that day is prior to September 1, 1938, then these rules will take effect on September 1, 1938. They govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that in the opinion of the court their application in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event the former procedure applies.

In interpreting 86(a) F.R.Civ.P. the federal courts are generally inclined to a liberal interpretation of the term "further proceedings in a pending action." See John R. Alley & Co. v. Federal Nat. Bank, 124 F.2d 995, 999 (C.A. 10th), where the Court stated:

> The purpose is evident in the new rules to extend their application, unless for good cause shown, to all proceedings, whether brought prior to their effective date or thereafter. It has been held that the trial court must specifically find that the application of the new rules would be unjust in order for one complaining of their application to raise the question on appeal. \* \* \*

In Doyle v. Loring, 107 F.2d 337, 340 (C.A.6th), the Court in determining the application of Rule 86(a) said:

> The Rules of Civil Procedure became effective while the suit was pending and whether they should have been applied was in the discretion of the court (Rule 86). * * *

In John R. Alley, supra, and Doyle, supra, the *further proceedings in the pending action* was in the nature of a motion. This fact, however, should not in and of itself preclude application of 86(a), or as in this case 10003 C.P.L.R., when the further proceeding as found herein is the service of process. In Volume 34, Words and Phrases, page 152, the word "proceedings" is defined as, "all the *steps* or *measures* adopted in the prosecution or defense of an action. Statter v. United States [9 Cir.], 66 F.2d 819, 822." (Italics supplied.) The word "proceeding" is defined in Black's Law Dictionary, Fourth Edition, 1951, p. 1368, as, "An act which is done by the authority or direction of the court, express or implied; an act necessary to be done in order to obtain a given end; a prescribed mode of action for carrying into effect a legal right. * * * "

In the light of the Court's pronouncement in Simonson, supra, that 302 C.P.L.R. is *purely procedural and remedial in nature*, this Court thinks it quite fair to characterize 302 C.P.L.R. as a "prescribed mode of action for carrying into effect a legal right."

■ The fact that an action was commenced herein as prescribed by Rule 3 F.R.Civ.P. and the fact that the plaintiff was *authorized* by this Court by virtue of Rules 4(e) and 4(f) F.R.Civ.P. to utilize this State's remedies for out-of-state service upon a non-domiciliary leads this Court to conclude that plaintiff's recourse to 302 C.P.L.R. was a *further proceeding in a pending action.*

■ The Court does not agree with the defendant's claim that application of 10003 C.P.L.R. is not warranted herein because such application "would not be feasible or would work injustice." As mentioned earlier, this action accrued on May 26, 1959, was commenced on June 10, 1963, and service made on August 17, 1965. The applicable time limitation for the cause of action for breach of warranty of seaworthiness was not as defendant states in its brief, "the admiralty doctrine of laches," but the state's statute of limitations for contract actions (see Amato v. Cie Maritime Belge (Lloyd Royal) S.A., supra, 212 F.Supp. 331). The applicable statute of limitations period being six years, that same statute was tolled when the plaintiff herein filed his complaint. See the latest pronouncement on the tolling of the statute of limitations upon the filing of a complaint in the federal court, Moore Company of Sikeston, Missouri v. Sid Richardson Carbon & Gasoline Co. (C.A. 8th) 347 F.2d 921.

■ The defendant contends that even if the plaintiff's cause of action falls within the applicable statutory period for bringing the action, the new C.P.L.R. went into effect on September 1st, 1963, and plaintiff not having served the summons until August 17, 1965, some two years later, was guilty of laches. In Huffmaster v. United States, 186 F.Supp. 120 (N.D.Cal.), the Court, in deciding whether the delay of service which amounted to some two years was justifiable, upheld the plaintiff's claim of excusable neglect. In Huffmaster, supra, the Court in commenting on the case of Messenger v. United States, 231 F.2d 328 (C.A.2d), stated (186 F.Supp. p. 123):

> In Messenger v. United States, supra, no proper service was ever effected. Therefore, the trial court did not obtain jurisdiction over the defendant. Such is not the case, in this proceeding. In Messenger, the trial court granted a motion to dismiss for failure to prosecute after plaintiff there had failed to effect proper service, five years after the filing of the complaint. On appeal, Judge Medina said, in a cogent presentation of the law, that the crucial test under Rule 41(b) is whether

there has been reasonable diligence in the prosecution of the action, but that lack of prejudice to defendant may be considered in cases of moderate or excusable neglect. The application of Rule 41(b) is discretionary with the Court, and there are no rigid time limits which establish lack of due diligence when they are exceeded.

As to the question of laches, the Court in Huffmaster, supra, says (186 F.Supp. p. 123):

"Laches" involves two things: (1) delay, and (2) prejudice resulting from that delay.

Even if this Court were inclined to agree with the defendant that the plaintiff's recourse to 302 C.P.L.R. was much too late and the delay inexcusable, the defendant does not show prejudice or injury to itself as a result of such delay. In Boling v. United States, 231 F.2d 926 (C.A. 9th), plaintiff's complaint was dismissed for failure to prosecute. After a delay of one year plaintiff procured the reinstatement of the case. It was then shown that immense difficulties "had arisen for the defendant caused by this one year delay and the trial judge dismissed the action under Rule 41(b). Nowhere does the defendant herein show any difficulties "caused by the two year delay in service" and, therefore, the Court finds that application of 302 C.P.L.R. and the related 10003 C.P.L.R. would not work an injustice to defendant.

■ The next issue before the Court is whether or not the plaintiff's cause of action for breach of warranty of seaworthiness is a cause of action as defined under 302 C.P.L.R. (a). It must be noted that the plaintiff herein alleges in his complaint that while in the performance of his work in the capacity of a longshoreman aboard the defendant's vessel, the M.V. TROUTPOOL, he sustained a serious injury when he was struck by a bale of rubber and that such injury was due to the negligence of the defendant and because of the unseaworthy condition of the vessel. The defendant claims that

the plaintiff's cause of action for breach of warranty of seaworthiness does not come within the purview of 302 C.P.L.R. (a) and that the New York Court of Appeals has construed 302 C.P.L.R. to apply only to a tortious act committed in this State and not to an injury arising from a breach of a warranty arising from a condition created outside the State and, if it arises from the transaction of any business, the business activities must be substantial and plaintiff must show that his cause of action actually arises from that business. Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N.Y. 2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, is distinguishable from the instant action. The single Longines-Wittnauer opinion determined the appeals in three separate actions, two for personal injuries and the other for breach of contract. The personal injury actions were entitled Feathers v. McLucas and Singer v. Walker, while the breach of contract suit bore the lead title of Longines-Wittnauer Watch Co. v. Barnes.

In Feathers v. McLucas, 15 N.Y.2d 443, 458, 261 N.Y.S.2d 8, 209 N.E.2d 68, the plaintiff sued for personal injuries sustained as a result of an explosion of a tractor-drawn steel tank containing a highly flammable liquified propane gas on a New York highway. The defendant-manufacturer, a foreign corporation located in Kansas, was sued for negligence and breach of warranty in the manufacture of the tank. The Court held that since the alleged improper designing and assembling of the tank occurred out of the state, the defendant was not a non-domiciliary who "commits a tortious act within the state" and, therefore, the action was not within the ambit of 302 C.P.L.R.

In the instant action the defendant asserts that since the factual issue in the case is the improper stowage of a bale of rubber tires, such stowage must necessarily have occurred outside of this State, before the ship's arrival and, therefore, the defendant could not have committed the tort in New York as 302 C.P.L.R. (a) (2) so requires as a consequence of the

decision rendered in the Feathers case, supra.

Here, the Court is dealing with a tort which is classified as a species of liability which is not limited by conception of negligence. Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. In Reed v. The Yaka, 373 U.S. 410, pp. 414–415, 83 S.Ct. 1349, p. 1353, 10 L.Ed.2d 448, the Court in referring to Sieracki stated:

> * * * a shipowner's obligation of seaworthiness cannot be shifted about, limited, or escaped by contracts or by the absence of contracts and that the shipowner's obligation is rooted, not in contracts, but in the hazards of the work. * * * and, as such, was charged with the traditional, absolute, and nondelegable obligation of seaworthiness which it should not be permitted to avoid.
>
> * * *

The circumstances of the condition herein *might* have originated where the vessel was loaded, but the continuing and non-delegable obligation imposed upon the shipowner does not allow it to contend that the tortious act or failure to act that injured the plaintiff was a tortious act not subject to the provisions of 302 (a) C.P.L.R. The principles of maritime law that bind a shipowner relate as well to transient unseaworthiness and conditional seaworthiness in the picture of initial liability. See Amador v. A/S J. Ludwig, 224 F.2d 437 (C.A. 2d), and Mitchell v. Trawler Racer, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941. There is no proof herein beyond the presumptive statements made by the defendant in its brief, page 26, that "improper stowage" was *necessarily* made outside the State, before the ship's arrival. The stowage could have been in this case, as it was in Amador, supra, 224 F.2d page 440, "only conditionally proper."

Even if this Court were to assume that plaintiff's cause of action was not a tortious act committed within this State, his cause of action surely was one arising from the defendant's "transact-ing of any business within this state." The defendant's references to Singer v. Walker, 15 N.Y.2d 443, 464, 261 N.Y. 2d 8, 209 N.E.2d 68, and to Longines-Wittnauer v. Barnes & Reinecke, supra, appear to be a bit strained.

Longines, supra, reflects some very salient points relating to this issue. First, 302 C.P.L.R. applies to foreign corporations not doing business in the traditional sense; second, the decisions of the United States Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, set the standard for irreducible activities requisite for "long-arm" jurisdiction—no longer would the tests relate to "residence" and "doing business" but a flexible requirement that "a nonresident defendant, against whom a judgment *in personam* is sought in the forum state, be shown merely to have certain minimum contracts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (326 U.S., at p. 316, 66 S.Ct., at p. 158); third, it is essential in each case that there be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (Citing Hanson v. Denckle, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283); and, fourth, 302 C.P.L.R. which is modeled upon a provision of the Illinois Civil Practice Act provides for personal jurisdiction over any non-domiciliary who "in person or through an agent transacts any business within the state or commits a tortious act within the state." These principles which Judge Fuld expounded in Longines, supra, apply to the facts of this case.

The defendant herein was a foreign corporation not doing business in the traditional sense but was engaged in a "purposeful activity" while its vessel was moored to a pier in the New York harbor. The "purposeful activity" was

the discharging of its cargo within this State for a profit. The fact that the vessel had been chartered by a French company and that company alone contracted for stevedore work with Mara Bros., Inc., plaintiff's employer does not insulate the defendant from liability. Nowhere in his brief or affidavit does the defendant state that the vessel was without the control and responsibility of officers and crews employed by said defendant at the time of the accident involved herein.

In Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 587–588 (C.A.2d), Judge Waterman made the observation that where representatives of a foreign corporation go to the forum state they are thereby protected by the laws of the forum state in a direct physical sense, and, if a party can enjoy benefits and protection of New York law in an overt physical manner, then jurisdiction can be invoked against it. In the instant case, the ship's master and crew members as well as the physical vessel itself had come into this State.

In discussing the Longines case, Judge Fuld makes it clear that if the contract is not actually made in New York it nonetheless can be brought to the forum state on the basis of a "local purposeful act" related to the contract. The criterion in cases like Longines is not whether the activities of the non-domiciliary defendant are *substantial* but whether the non-domiciliary defendant engaged in *some* purposeful activities in this State in connection with the matter in suit. See Hanson v. Denckla, supra, 357 U.S., pp. 251, 253, 78 S.Ct. 1228.

For the foregoing reasons this Court is of the opinion that the plaintiff's cause of action comes within the ambit of 302 C.P.L.R. (a) (1).

This Court does not agree with the defendant's last contention that 302 C.P.L.R. is not applicable to an action growing out of an accident arising from the mere use and operation of a documented foreign vessel. See Section 74 of the Navigation Law of the State of New York. This issue appears to have been resolved in Patrick Ellman, Inc. v. Nieves, 41 Misc.2d 186, 245 N.Y.Supp. 2d 545, where a vessel owner made a contract in New York whereby he engaged plaintiff's assignor to furnish a crew to deliver the vessel to the Virgin Islands. This contract was deemed a sufficient transaction to bring the vessel owner within the scope of 302 C.P.L.R. (a) (1) permitting the court to exercise jurisdiction over a non-domiciliary and to permit service on owner in Virgin Islands.

The plaintiff has withdrawn that part of his action based on negligence of the vessel, and therefore the only question left in the complaint is whether or not the vessel was unseaworthy.

For the foregoing reasons, the defendant's motion for an order vacating and setting aside the service of the summons and complaint is denied.